**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

---

CSI Technology, Inc.,

                        Plaintiff,

                                                          Civ. No. 08-450 (RHK/JJK)
                                                          **MEMORANDUM OPINION
                                                          AND ORDER**

v.

Commtest Instruments Ltd. and 24/7
Power, Inc.,

                        Defendants.

---

Alan G. Carlson, Philip P. Caspers, Samuel A. Hamer, James R. Hietala, Jr., Carlson, Caspers, Vandenburgh & Lindquist, P.A., Minneapolis, Minnesota, for Plaintiff.

Bethany D. Krueger, John W. Ursu, Greene Espel, P.L.L.P., Minneapolis, Minnesota, Robert E. Pitts, R. Bradford Brittian, Paul A. Forsyth, Pitts & Brittian, P.C., Knoxville, Tennessee, for Defendant Commtest Instruments Ltd.

Stephen F. Buterin, Coleman, Hull and Van Vliet, P.L.L.P., Minneapolis, Minnesota, for Defendant 24/7 Power, Inc.

---

**INTRODUCTION**

In this action, Plaintiff CSI Technology, Inc. ("CSI") has sued Defendants Commtest Instruments Ltd. ("Commtest") and 24/7 Power, Inc. ("24/7 Power"), alleging that Defendants have infringed two patents held by CSI. Presently before the Court are two Motions: (1) Commtest's Motion to transfer this action to the United States District Court for the Eastern District of Tennessee; and (2) 24/7 Power's Motion to Dismiss or

Stay. For the reasons set forth below, the Court will grant Commtest's Motion to transfer and decline ruling on 24/7 Power's Motion to dismiss/stay in favor of the transferee court.

## BACKGROUND

### I.  The Parties

CSI is a Delaware corporation with its principal place of business in Wilmington, Delaware. (Compl. ¶ 1.) CSI is engaged solely in "managing and licensing intellectual property rights." (Id.) CSI is a wholly owned subsidiary of Computational Systems, Inc. ("Computational Systems"), a Tennessee corporation with a principal place of business in Knoxville, Tennessee. (Plunkett Decl. ¶ 3; Forsyth Aff. Ex. A.) Computational Systems, in turn, is wholly owned by Emerson Electric Company ("Emerson"), an international conglomerate of manufacturing and technology companies headquartered in St. Louis, Missouri. (See Plunkett Decl. ¶ 3; http://www.emerson.com/en-US/about_emerson/ company_overview/Pages/Home.aspx (last visited August 18, 2008).) CSI and Computational Systems are part of Emerson's "Process Management: Asset Optimization" division, headquartered in Eden Prairie, Minnesota. (Plunkett Decl. ¶¶ 3-4.)

Commtest is a New Zealand company with its principal place of business in Christchurch, New Zealand. (Compl. ¶ 2.) Commtest's United States operations are handled by Commtest, Inc., a wholly owned subsidiary headquartered in Knoxville, Tennessee. (See http://www.commtest.com (last visited August 18, 2008); First Block

Aff. ¶ 1.)[1]  Commtest manufactures and distributes data acquisition and analysis products. (See http://www.commtest.com/content/about-us/default.aspx (last visited August 18, 2008).)

24/7 Power is a Minnesota corporation with its principal place of business in Plymouth, Minnesota. (Compl. ¶ 3.) 24/7 Power distributes Commtest products in Minnesota. (Kosmides Aff. ¶ 4.)

## II.  The Litigation

On September 12, 2005, an attorney in Emerson's Process Management division wrote to Commtest's counsel, accusing Commtest of infringing four United States patents held by Computational Systems.[2] (Forsyth Aff. Ex. F.) It is unclear from the record precisely how Commtest responded, although it indicates in its brief that it denied the allegation (Commtest Mem. at 4); it is equally unclear what happened in the interim between September 2005 and February 2008, when the instant action was commenced. Regardless, on February 21, 2008, CSI commenced the instant action, alleging that Commtest and 24/7 Power are "making, importing, selling, using, and/or offering for sale" software for "predictive maintenance databases" that infringes the '325 patent. (Compl. ¶¶ 9-11.) CSI also alleges that Commtest and 24/7 Power are "making,

---

[1] For ease of reference, Commtest Instruments Ltd. and Commtest, Inc. are hereinafter referred to collectively as "Commtest."

[2] United States Patent Nos. 6,192,325; 5,633,811; 5,870,699; and 5,875,420. (Forsyth Aff. Ex. F.) While no party has explained the subject matter of these patents, they appear to concern hand-held vibration analyzers used by manufacturing companies to detect defects in manufacturing equipment. (See id. Exs. C-D, F.) For ease of reference, the Court refers to each of these patents by its last three numbers, e.g., the '325 patent.

importing, selling, using, and/or offering for sale" vibration analyzer equipment that infringes the '811 patent. (Compl. ¶¶ 17-19.) The Complaint makes no mention of the other two patents discussed in the September 12, 2005 letter.

Several months after this action was filed, Commtest commenced an action against CSI and Computational Systems in the United States District Court for the Eastern District of Tennessee. In that action, Commtest seeks a declaration that the '325, '811, and '699 patents are invalid and unenforceable. (See Forsyth Aff. Ex. B.) Commtest now moves to transfer this action to the Eastern District of Tennessee.[3]

## ANALYSIS

Commtest seeks to transfer this action pursuant to 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). A court faced with a motion under this statute,

---

[3] Relying on the "customer-suit" doctrine, 24/7 Power also moves to dismiss or stay this action insofar as the claims in the Complaint are alleged against it. The customer-suit doctrine is implicated when a reseller of allegedly infringing goods (the customer) is sued for infringement in one action, while the manufacturer of those goods brings a separate declaratory-judgment action seeking to invalidate the patent(s) at issue. Because a manufacturer typically has a greater interest than a reseller in defending against allegations of infringement, courts sometimes stay or dismiss actions brought against resellers pending resolution of the manufacturers' declaratory-judgment actions. See, e.g., Kahn v. Gen. Motors Corp., 889 F.2d 1078, 1081-82 (Fed. Cir. 1989). Here, 24/7 Power argues that it is only a reseller of Commtest's goods and, accordingly, CSI's claims against it fall squarely within the customer-suit doctrine and should be stayed or dismissed. CSI responds that 24/7 Power is infringing at least one of the patents at issue through *use* and not simply resale; in other words, it contends that 24/7 Power is more than a mere customer of Commtest. Because the Court concludes that transfer is appropriate, it need not resolve this issue, and will leave its resolution to the transferee court. See, e.g., Coxcom, Inc. v. Hybrid Patents Inc., No. C-06-7918, 2007 WL 1976143, at *1 n.1 (N.D. Cal. July 3, 2007) (noting that district courts "ha[ve] discretion to hear a motion to transfer in advance of ruling on [a] motion to dismiss").

therefore, must undertake a two-part inquiry. "The initial question . . . is whether the action might have been brought in the proposed transferee district. If so, the Court must [then] consider the convenience and interest of justice factors." Totilo v. Herbert, 538 F. Supp. 2d 638, 639-40 (S.D.N.Y. 2008).

**I.    Might this action have been brought in the Eastern District of Tennessee?**

The phrase "might have been brought" in Section 1404(a) refers to districts where, *inter alia*, the defendants would be subject to personal jurisdiction. See 15 Wright, Miller & Cooper, Federal Practice & Procedure: Jur. 2d § 3845 (2d ed. 1986); In re Nine Mile Ltd., 692 F.2d 56, 59-60 (8th Cir. 1982), abrogated on other grounds by Mo. Hous. Dev. Comm'n v. Brice, 919 F.2d 1306 (8th Cir. 1990); Am. Standard, Inc. v. Bendix Corp., 487 F. Supp. 254, 261 (W.D. Mo. 1980). Here, CSI argues that it could not have commenced this action in the Eastern District of Tennessee because 24/7 Power would not be subject to personal jurisdiction in that district. (Mem. in Opp'n to Commtest Mot. at 5-8.) The Court does not agree.[4]

Two prerequisites must be met to establish personal jurisdiction over a nonresident defendant: (1) the forum state's long-arm statute must be satisfied and (2) due process must not be violated. E.g., Hildebrand v. Steck Mfg. Co., 279 F.3d 1351, 1354 (Fed. Cir.

---

[4] In analyzing where an action "might have been brought," courts also consider whether the defendant would be amenable to service of process in the proposed transferee district, whether venue would be proper there, and whether subject-matter jurisdiction would exist there. Am. Standard, 487 F. Supp. at 261. CSI has not raised any of these issues.

5

2002).⁵ Because the Tennessee long-arm statute is as broad as due process, see Tenn. Code § 20-2-214(a)(6); Masada Inv. Corp. v. Allen, 697 S.W.2d 332, 334 (Tenn. 1985) (observing that Section 20-2-214(a)(6) "expanded the jurisdiction of Tennessee courts to the full limit allowed by due process"), these two inquiries merge into one in this case. Accordingly, the Court must only determine whether the exercise of personal jurisdiction over 24/7 Power in Tennessee would be consistent with the Due Process Clause when deciding whether the Eastern District of Tennessee is a district where this action "might have been brought."

In the personal-jurisdiction context, due process is satisfied only if a non-resident defendant has "minimum contacts" with the forum state. E.g., Silent Drive, Inc. v. Strong Indus., Inc., 326 F.3d 1194, 1201 (Fed. Cir. 2003) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980), and Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). The defendant must purposefully establish sufficient contacts with the forum state that it should reasonably anticipate being haled into court there. Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1358-59 (Fed. Cir. 1998). "Minimum contacts," however, is not the end of the inquiry. Once a court determines that sufficient contacts exist with the forum state, those contacts must be examined "in light of other factors to determine whether the assertion of personal jurisdiction would

---

⁵ Federal Circuit law controls the issue of personal jurisdiction in patent-infringement cases. Hildebrand, 279 F.3d at 1354.


comport with 'fair play and substantial justice.'" Id. at 1359 (quoting <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 476 (1985)).[6] Accordingly,

> [t]he three factors for determining whether the exercise of personal jurisdiction over an out-of-state defendant comports with due process are: 1) whether the defendant "purposefully directed" its activities at residents of the forum; 2) whether the claim "arises out of or relates to" the defendant's activities in the forum; [and] 3) whether the exercise of jurisdiction is "reasonable and fair." . . . [T]he first two factors correspond with the "minimum contacts" prong of the <u>International Shoe</u> analysis, and the third factor corresponds with the "fair play and substantial justice" prong of the analysis.

<u>Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.</u>, 297 F.3d 1343, 1351 (Fed. Cir. 2002) (citations omitted). After considering these factors here, the Court concludes that personal jurisdiction over 24/7 Power could properly be exercised in Tennessee.

<u>First</u>, 24/7 Power has "purposefully directed" its activities at Tennessee. It has signed an agreement with Commtest, Inc. – a Tennessee corporation – pursuant to which it became an authorized vendor of Commtest products. (Deverell Aff. ¶ 4; Kosmides Aff. ¶¶ 3-4; Second Block Aff. Ex. A.) The agreement (1) was executed in Knoxville, Tennessee, (2) is governed by Tennessee law, and (3) contains a Tennessee forum-selection clause. (Deverell Aff. ¶ 4; Second Block Aff. Ex. A.) 24/7 Power employees have traveled to Tennessee to be trained on the Commtest products they would be selling. (Deverell Aff. ¶ 5.) While customers of 24/7 Power who purchase Commtest products

---

[6] These "other factors" include the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the fifty states' shared interest in furthering fundamental substantive social policies. <u>Burger King</u>, 471 U.S. at 477.

receive them from New Zealand, 24/7 Power is billed from Commtest's Knoxville, Tennessee office, and it presumably sends its payments there. (Deverell Aff. ¶ 6.) In addition, these same customers receive a coupon entitling them to "a formal two-day training session at Commtest's facilities in Knoxville, Tennessee." (Mackay Aff. ¶ 3.) And, communications necessary to 24/7 Power's sales relationship with Commtest inevitably flow back and forth between Minnesota and Tennessee. For these reasons, 24/7 Power's contacts with Tennessee cannot fairly be labeled "random," "fortuitous," or "attenuated" – rather, they are purposefully directed at that state. That is sufficient. See Burger King, 471 U.S. at 480 (personal jurisdiction existed in Florida over Michigan-based franchisee where ongoing, long-term relationship was established between franchisee and Florida-based franchisor).

Second, the claims asserted by CSI relate to 24/7 Power's Tennessee contacts. Indeed, CSI alleges that 24/7 Power is infringing its patents by using or selling Commtest's products. (Compl. ¶¶ 9, 17; Mem. in Opp'n to 24/7 Power Mot. at 6-9.) The use or sale of those products, however, arises directly out of 24/7 Power's status as a Commtest distributor – that is, arises out of its contractual relationship with Tennessee-based Commtest, Inc. 24/7 Power's Tennessee contacts, therefore, are necessarily implicated by the claims in this case.

Third, this is not one of the "rare" cases in which minimum contacts exist but the exercise of personal jurisdiction would be unreasonable. Elecs. for Imaging, Inc. v. Coyle, 340 F.3d 1344, 1352 (Fed. Cir. 2003). The burden placed on 24/7 Power by

litigating in Tennessee is of little moment, given that it has consented to a transfer there. (See Brittian Aff. ¶¶ 3-4.) Tennessee certainly has an interest in providing a forum for infringement litigation against 24/7 Power, insofar as Computational Systems (the named assignee of the '811 patent) is a Tennessee corporation and CSI, the plaintiff here, is its wholly owned subsidiary. See Dainippon Screen Mfg. Co. v. CFMT, Inc., 142 F.3d 1266, 1271 (Fed. Cir. 1998) (parent-subsidiary relationship relevant to "reasonable and fair" calculus). No conflict exists between Tennessee's interests in adjudicating CSI's claims and Minnesota's interests, since the "same body of federal patent law" will govern the claims regardless of forum. Coyle, 340 F.3d at 1352. And, efficient relief can be had in Tennessee, as Commtest has already commenced a declaratory-judgment action there seeking to invalidate the patents at issue.

Based on the foregoing, the Court concludes that 24/7 Power would be subject to personal jurisdiction vis-a-vis CSI's claims in Tennessee, and the Eastern District of Tennessee is a district in which this action "might have been brought" under 28 U.S.C. § 1404(a).

**II.     Do the relevant factors weigh in favor of transferring this case to the Eastern District of Tennessee?**

As the text of Section 1404(a) makes clear, three general factors inform whether a district court should grant a motion to transfer: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice. See also Terra Int'l, Inc. v.

9

Miss. Chem. Corp., 119 F.3d 688, 691 (8th Cir. 1997).[7] A district court may also consider any other factors it finds relevant when deciding whether transfer is warranted. Id.  There is no precise mathematical formula to be employed when balancing the relevant factors.  As one Court of Appeals has noted, "'[w]eighing' and 'balancing' are words embodying metaphors which, if one is not careful, tend to induce a fatuous belief that some sort of scales or weighing machinery is available.  Of course it is not.  At best, the judge must guess, and we should accept his guess unless it is too wild." Ford Motor Co. v. Ryan, 182 F.2d 329, 331-32 (2d Cir. 1950).  Yet, the Eighth Circuit has counseled that transfer motions "should not be freely granted." In re Nine Mile Ltd., 692 F.2d at 61. Accordingly, a "heavy" burden rests with the movant to demonstrate that transfer is warranted.  E.g., Integrated Molding Concepts, Inc. v. Stopol Auctions, L.L.C., Civ. No. 06-5015, 2007 WL 2263927, at *5 (D. Minn. Aug. 6, 2007) (Schiltz, J., adopting Report & Recommendation of Erickson, M.J.); Radisson Hotels, Int'l v. Westin Hotel Co., 931 F. Supp. 638, 641 (D. Minn. 1996) (Kyle, J.).

### A. The convenience of the parties

The Court concludes that the first factor, the convenience of the parties, favors transfer to Tennessee.

Initially, it is clear that Tennessee is a far more convenient forum for Commtest than Minnesota.  Its United States operations are headquartered in Tennessee and several of its Tennessee employees are identified as potential witnesses in this case. (See Forsyth

---

[7] Motions to transfer venue are governed by regional law rather than Federal Circuit law. E.g., Winner Int'l Royalty Corp. v. Wang, 202 F.3d 1340, 1352 (Fed. Cir. 2000).

Aff. at 6-7; First Block Aff. ¶¶ 2-5; Deverell Aff. ¶ 3.) While some Commtest employees likely would be required to travel from New Zealand in order to testify, Commtest's Tennessee office is a short distance from the Eastern District of Tennessee courthouse, allowing those employees to easily continue working while in this country for trial. Furthermore, because several of its New Zealand-based employees frequently travel to Tennessee, Commtest rents an apartment in Knoxville for their use, rendering travel there much less disruptive than travel to Minnesota. (First Block Aff. ¶¶ 3, 6.)[8]

Second, it is not altogether clear that CSI would be inconvenienced by litigating in Tennessee, and even if it were, such inconvenience would pale in comparison to Commtest's inconvenience of litigating in Minnesota. No CSI employees have been identified as potential witnesses in this case, likely because CSI is a mere intellectual-property holding company. And while there are several Minnesota employees of companies affiliated with CSI (Computational Systems and Emerson) listed as proposed witnesses, at least six such individuals – with highly relevant information, including the circumstances surrounding the creation of the patented inventions – live and work in Tennessee. (See Garvey Decl. ¶¶ 4, 7-8; see also Mem. in Opp'n to Commtest Mot. at 2-3.) Contrary to CSI's argument, therefore, this is not a case in which a transfer would

---

[8] CSI points out that air travel between New Zealand and Minnesota is from three to five hours shorter than air travel between New Zealand and Knoxville. (Hamer Decl. ¶¶ 5-8 & Exs. A-D.) Given that all of the flights from New Zealand identified by CSI are at least 21 hours in duration, these differences are *de minimis* and of little import to the convenience analysis. Simply put, these witnesses will be inconvenienced regardless of whether this matter is litigated in Tennessee or in Minnesota.

simply "shift the inconvenience" from Commtest to CSI.  Graff v. Qwest Commc'ns Corp., 33 F. Supp. 2d 1117, 1121 (D. Minn. 1999) (Doty, J.).[9]

Finally, the Court notes that 24/7 Power likely would be inconvenienced by litigating in Tennessee. Yet by agreeing to Commtest's proposed transfer, it has tacitly conceded that such inconvenience would be minor.  Moreover, the parties with the real dogs in this fight are CSI, the patent holder, and Commtest, the manufacturer of the allegedly infringing product that 24/7 Power purportedly is selling and/or using.  For this reason, the Court believes that any potential inconvenience imposed upon 24/7 Power by litigating in Tennessee is entitled to less weight in the analysis.

On balance, therefore, the convenience-of-parties factor militates in favor of transfer to Tennessee.

### B.     The convenience of the witnesses

The second factor, the convenience of the witnesses, is generally regarded as the most important factor in the transfer analysis.  See Biometics, LLC v. New Womyn, Inc., 112 F. Supp. 2d 869, 876 (E.D. Mo. 2000); 15 Wright, Miller & Cooper, Federal Practice

---

[9] The Court recognizes that the convenience analysis does not simply turn on the number of witnesses each side has identified.  See, e.g., Terra Int'l, 119 F.3d at 696 (noting that the "sheer number of witnesses will not decide which way the convenience factor tips").  Rather, the focus is on the importance of the witnesses' testimony.  Nw. Airlines, Inc. v. Filipas, Civ. No. 07-4803, 2008 WL 1773756, at *5 (D. Minn. Apr. 15, 2008) (Ericksen, J.) ("[t]he court must examine the materiality and importance of the anticipated witnesses' testimony and determine whether the forum is convenient for them").  Suffice it to say, the Court believes that all of the individuals identified as potential witnesses will provide important testimony in this case, including information concerning the invention of the patented technology, marketing and sales information, and prior discussions between the parties concerning Commtest's alleged infringement.

& Procedure: Jur. 2d § 3851 (2d ed. 1986).  In analyzing this factor, "the court focuses its attention on the location of non-party witnesses," since it is assumed that "witnesses under the control of the parties will appear voluntarily in either jurisdiction."  Cent. States, Se. & Sw. Areas Pension Fund v. Davidson, No. 06 C 6979, 2007 WL 722889, at *2 (N.D. Ill. Mar. 8, 2007); accord, e.g., Cont'l Airlines, Inc. v. Am. Airlines, Inc., 805 F. Supp. 1392, 1397 (S.D. Tex. 1992).  The Court concludes that this factor also favors transfer to Tennessee.

The key non-party witnesses identified in the Motion papers are the several inventors of the '325, '811, and '699 patents.  (See Garvey Decl. ¶¶ 4-11; Forsyth Aff. ¶ 2.)  Many remain employed by Computational Systems in Tennessee.  (See Mem. in Opp'n to Commtest Mot. at 2-3 (noting that three of the five inventors of the '325 patent and one of the inventors of the '811 and '699 patents are employed by Computational Systems in Tennessee).)  Yet, two inventors who now work elsewhere still reside in Tennessee.  (See id.; Garvey Decl. ¶¶ 6, 11.)  The remaining inventors, now residents of Nevada, Massachusetts, and the Philippines, respectively, are likely to be inconvenienced regardless of whether this case is venued in Minnesota or in Tennessee.  (See id. ¶¶ 5, 9-10.)  In addition, one of the attorneys who prosecuted the '325 and '811 patents before the Patent and Trademark Office, Andrew Neely, works in Tennessee (and presumably lives there).  (See Forsyth Aff. ¶ 2.)[10]

---

[10] CSI points out that two manufacturing companies that provide components to Commtest for use in the accused products are located outside of Tennessee.  (See Mem. in Opp'n to Commtest Mot. at 15.)  Those companies, however, are based in Massachusetts and Texas, meaning that Minnesota likely is no more convenient for employees of those companies than

13

As the foregoing makes clear, some of the potential non-party witnesses are located in Tennessee, but none is located in Minnesota.[11]  Accordingly, the Court concludes that the convenience-of-witnesses factor weighs in favor of transfer.

### C.     The interests of justice

Among the myriad factors considered by courts when analyzing the interests of justice are judicial economy, docket congestion, each party's ability to enforce a judgment, obstacles to a fair trial, and conflict-of-law issues.  See, e.g., Terra Int'l, 119 F.3d at 696; Prod. Fabricators, Inc. v. CIT Commc'ns Fin. Corp., Civ. No. 06-537, 2006 WL 2085413, at *3 (D. Minn. July 25, 2006) (Kyle, J.).  Most of these factors are not pertinent to the case *sub judice*.  For example, there are no conflict-of-law issues, insofar as federal patent law will govern this case regardless of where it is tried.  Nor have the parties argued that docket congestion renders Minnesota more convenient than Tennessee, or vice versa.  Nevertheless, several of the interest-of-justice factors support transferring this case to Tennessee.

First, principles of judicial economy suggest that transfer is warranted.  The invalidity claims asserted by Commtest in the Tennessee action have also been asserted as counterclaims in the instant action.  Thus, permitting this action to proceed independent

---

Tennessee.  CSI has not identified any Minnesota employees of these companies as potential witnesses.

[11] The three Minnesota-based Emerson employees identified by CSI are not non-party witnesses.  See Ramsey v. Fox News Network, LLC, 323 F. Supp. 2d 1352, 1356 (N.D. Ga. 2004) ("[p]arty witnesses are the parties themselves *and those closely aligned with a party*") (emphasis added).  Their purported inconvenience was taken into consideration in the convenience-of-parties analysis discussed above.

14

of the Tennessee action would lead to duplication of effort by the federal court system and by the parties. Were this case to be transferred to Tennessee, however, it could (and likely would) be consolidated with the Tennessee action.[12]

Second, in the Court's view, CSI has named 24/7 Power as a defendant for an improper purpose: to justify venue in Minnesota, likely because Emerson's Process Management Division is headquartered here. There is no obvious explanation in the record why CSI chose to name only one Commtest distributor – 24/7 Power – as a defendant when Commtest employs 23 different distributors across the United States to sell its products. (See Hietala Aff. Ex. A.) Each of those distributors would be equally as "guilty" of infringement as 24/7 Power if the claims in the Complaint were established. And there is nothing before the Court to suggest that 24/7 Power is one of Commtest's primary distributors; indeed, it appears that 24/7 Power limits its activities solely to Minnesota, while other Commtest distributors serve multiple states or heavily populated areas like Southern California that have more than one Commtest distributor. (See id.) The only reasonable conclusion, then, is that CSI added 24/7 Power as a defendant in order to muddy the transfer waters and hope to justify venue in Minnesota, since 24/7 Power is headquartered here. Confronting a similar situation, the court in Calmedica, LLC v. Novoste Corp., No. 03 C 3924, 2004 WL 413296 (N.D. Ill. Jan. 30, 2004),

---

[12] The Court recognizes that the reverse is also true – that is, CSI could move to transfer the Tennessee action to this Court, where the two actions could then be consolidated. There is no indication in the record, however, that CSI has sought such relief.

concluded that the defendant's motion to transfer should be granted due (in part) to the plaintiff's forum shopping:

> It is transparent to this Court that Calmedica has named Rush as a defendant in this matter solely to justify venue in this Court. This is not a case in which a patent holder has sued a manufacturer along with its top purchasers or distributors. Rather, Rush is merely one of 59 hospitals worldwide that participated in the Beta-Cath clinical trials and one of [the manufacturer's] many customers located through the United States that is using the Beta-Cath system.

Id. at *2. The same result should obtain here.

CSI argues that several of the interest-of-justice factors weigh in its favor – the Court disagrees. CSI contends that a plaintiff's choice of forum "is typically entitled to considerable deference," particularly where "the plaintiff is located in the district in which the lawsuit was filed." (Mem. in Opp'n to Commtest Mot. at 10.) But CSI is not located in Minnesota – it is a Delaware corporation with its principal place of business in Wilmington, Delaware. (Compl. ¶ 1.) CSI's choice of a Minnesota forum, therefore, is entitled to little deference. See Reid-Walen v. Hansen, 933 F.2d 1390, 1404 (8th Cir. 1991) (noting that "there would be little reason to defer" to the plaintiff's choice of a Missouri forum when it did not reside there).

CSI also notes that its (and 24/7 Power's) relevant documents are located here, while most of Commtest's relevant documents are located in New Zealand. (Mem. in Opp'n to Commtest Mot. at 18.) Even assuming that to be the case – which is not entirely clear from the record (see First Block Aff. ¶ 2) – it does little to alter the interest-of-justice analysis. "While access to books and records is a factor to be take into account

when determining if transfer is warranted, modern technology allows easy reproduction and little weight should be given if the records can be easily transported." Medicap Pharmacies, Inc. v. Faidley, 416 F. Supp. 2d 678, 688 (S.D. Iowa 2006).  CSI has made no showing that the relevant documents are so voluminous that their transport would entail a "major undertaking." Becnel v. Smile Cmty. Action Agency, Inc., 207 F. Supp. 2d 520, 522 (M.D. La. 2001) (quoting Gardipee v. Petroleum Helicopters, Inc., 49 F. Supp. 2d 925, 931 (E.D. Tex. 1999)); Met-L-Wood Corp. v. SWS Indus., Inc., 594 F. Supp. 706, 710 (N.D. Ill. 1984).

Finally, CSI argues that the locus of operative events occurred in this district because Commtest and 24/7 Power are infringing here.  (Mem. in Opp'n to Commtest Mot. at 18.)  But the material events in a patent infringement action "do not revolve around a particular situs." Sitrick v. FreeHand Sys., Inc., No. 02 C 1568, 2003 WL 1581741, at *2 (N.D. Ill. Mar. 27, 2003).  Indeed, "[p]atent infringement determinations are made by comparing the alleged infringing device with the language of the claims. This determination does not involve any significant location." Id.

For these reasons, the interests of justice weigh in favor of transfer to Tennessee.

## CONCLUSION

All three of the relevant factors here – the convenience of the parties, the convenience of the witnesses, and the interests of justice – weigh in favor of transferring this case to the Eastern District of Tennessee.  Accordingly, the Court concludes that Commtest has satisfied its "heavy" burden of demonstrating that transfer is warranted.

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Commtest's Motion to Change Venue (Doc. No. 20) is **GRANTED** and this case is **TRANSFERRED** to the United States District Court for the Eastern District of Tennessee.  The Clerk of the Court is directed to take all steps necessary to effectuate this transfer in an expeditious fashion.

Dated: August 26, 2008                                          s/Richard H. Kyle
                                                                RICHARD H. KYLE
                                                                United States District Judge